**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JERRY BECK, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:18 CV 35 SRW |
| ) | |
| DAVID VANDERGRIFF[1], ) | |
| ) | |
| Respondent(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Jerry Beck for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.    BACKGROUND**

In 2011, a jury convicted Petitioner of Sexual Exploitation of a Minor, Victim Tampering, Armed Criminal Action, Attempted Victim Tampering, two counts of Forcible Sodomy, and two counts of First-Degree Statutory Sodomy. The Circuit Court of St. Charles County sentenced him to two consecutive life imprisonments. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, which affirmed his convictions. He then filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

---

[1] Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. *See Missouri Dept. of Corr. Offender Search*, http://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last visited October 26, 2020). David Vandergriff is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

1

## II.     STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's

presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.    DISCUSSION

Petitioner asserts five grounds for relief in his Petition: (1) the trial court erred in disqualifying his chosen counsel, Frank Carlson; (2) his trial counsel, Nick Zotos, was ineffective for failing to object to the prosecution's opening statement and presentation of prior bad acts evidence; (3) his direct appeal counsel was ineffective for failing to assert that the trial court erred in admitting prior bad acts evidence; (4) his direct appeal counsel was ineffective for failing to assert that the trial court erred in admitting Petitioner's statements to Detective Kaiser; and (5) his pretrial counsel, Frank Carlson, was ineffective for refusing to participate in the pretrial, Section 491 hearing.[2]

### A.    Procedural Default

Petitioner did not raise ground five in his direct appeal, PCR motions, or PCR appeal; therefore, this claim is procedurally defaulted and must be dismissed. "[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*,

---

[2] A Section 491 hearing is a hearing to determine if a statement made by a child under the age of fourteen is admissible in a criminal trial to prove the truth of the matter asserted pursuant to Mo. Rev. Stat. § 491.075.

3

526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848)). A habeas petitioner under § 2254 may avoid procedural default only by showing there was cause for the default and resulting prejudice, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner does not assert any reason for cause for the default or resulting prejudice. Because ground five is procedurally defaulted, the Court denies the Petition as to ground five. The Court will address the remainder of Petitioner's grounds for relief on the merits.

**B.     Ground One**

In his first ground for relief, Petitioner argues the trial court erred in disqualifying the counsel he hired, Frank Carlson. Petitioner raised this argument in his direct appeal, which the Missouri Court of Appeals denied. The appellate court described the background facts for this issue as follows:

> Beck was charged with multiple counts of sodomy, sexual exploitation, furnishing pornographic materials to a minor, victim tampering, and armed criminal action. In January 2010, Frank Carlson ("Carlson") entered his appearance as counsel for Beck. A trial was set by agreement of the parties for September 14 through 16, 2010.
>
> On August 31, 2010, Carlson filed a motion to continue the trial. He asserted that while he had received "some funds," it was not sufficient to take depositions or otherwise prepare for trial. After a hearing, the court denied the motion. On September 9, Carlson sent a letter informing the court that if the case were called for trial as scheduled he would announce "not ready" and would not participate in the trial, which would deny Beck the right to effective assistance of counsel and other trial rights. Carlson noted his nonparticipation would cause the case to be "tried twice."

4

On September 13, 2010, the day before trial, the court held a hearing on the State's motion to allow hearsay testimony of child witnesses. Carlson appeared but declined to participate. The court went forward with the hearing, during which the State questioned S.W. and L.W. Carlson did not cross-examine the witnesses. Following the hearing, the trial court questioned Carlson about his readiness for trial. Carlson asserted he had been unable to conduct depositions[3] due to lack of payment.

The court noted that Carlson had known of the September trial date since March 2010, but had not done any preparation for trial during that period and had not made the court aware of any difficulties with trial preparation until August 31, only two weeks before trial. The court characterized Carlson's actions as "not diligent representation of [his] client." The court further queried if Carlson was admitting he had not competently represented Beck because he had not been paid, and Carlson responded that he "ha[d] not been able, your honor, to adequately prepare [Beck's] defense."

Carlson moved to withdraw as counsel for Beck. Beck agreed he was asking Carlson to withdraw and stated he had not known until the Friday before trial that Carlson would not participate in the trial. The court granted Carlson's motion to withdraw but indicated its intent to file a complaint with the bar disciplinary committee, asserting that Carlson's actions were not in the best interest of the court and that he had engaged in conduct that was prejudicial to the administration of justice. The court continued the trial setting to allow Beck to find new counsel.

After the court granted Carlson's withdrawal, Beck's son approached the bench and informed the court that his family had paid Carlson $12,000 to represent Beck. Carlson agreed the family had paid him approximately that amount, but stated it was "[a]bsolutely not" sufficient. Despite his withdrawal, Carlson indicated he would like to stay on the case and be allowed time to prepare. The court noted that Carlson "ha[d] had twelve thousand dollars and nine months" to prepare, and stated that it "would be loath to allow Mr. Carlson to stay on this case and take it to trial some other time."

On October 6, 2010, Carlson again entered an appearance and filed a notice to take depositions. The State timely filed a motion to disqualify Carlson. The court scheduled a hearing on the motion for November 18, but Carlson failed to appear. After a rescheduled hearing, at which Carlson appeared, the trial court granted the State's motion to disqualify Carlson.

---

[3] Carlson stated specifically that it was necessary for him to depose the investigating officers, the victims, and S.W. and L.W. The court pointed out that Carlson had just had an opportunity to question S.W. and L.W. on cross-examination but refused.

5

The case proceeded to trial at which Beck was represented by private counsel.[4] (ECF No. 11-8, at 23-25).[5] In denying Petitioner's argument on direct appeal, the appellate court looked to the Sixth Amendment and cited Supreme Court cases *United States v. Gonzales-Lopez*, 548 U.S. 140, 144 (2006) and *Wheat v. United States*, 486 U.S. 153, 159 (1988), along with several Missouri cases. It ultimately held:

> Reviewing the record here, we find the trial court based its decision on how Carlson's actions would affect Beck's Sixth Amendment rights to a fair trial and the integrity of the judicial system, and did not allow the State to use the disqualification as a procedural weapon.
>
> The court characterized, on the record, Carlson's representation of Beck "not diligent [in the] representation of [his] client," and indicated Carlson had not competently represented Beck. Moreover, the court had indicated its intention to file a bar complaint against Carlson based on his actions in representing Beck. With this history, any future representation of Beck by Carlson would be tainted by the allegations of lack of diligence and lack of competence. For the court, after expressing these serious reservations, to then allow Carlson to reenter his appearance and represent Beck at trial would call into question the fairness of Beck's trial, and thus the integrity of the judicial system in allowing the questionable representation to occur.
>
> Further, a court may, in its discretion, disqualify attorneys for case-management considerations. Courts have "wide latitude" in balancing a defendant's right to choice of counsel against the needs of its calendar, fairness to all parties, and the parties' and the public's interest in the efficient administration of justice. Although Beck asserts on appeal that Carlson was no longer threatening nonparticipation at the disqualification hearing, the record demonstrates that it was reasonable for the court to not accept counsel's assurances of preparedness and diligence.[6] Again, it is appropriate for a court to consider an attorney's past actions.

---

[4] Initially after Carlson was granted leave to withdraw, the court informed Beck he would be assigned a public defender. However, after it discovered Beck had $12,000 to pay Carlson, the court noted Beck might not qualify for a public defender, but still encouraged him to apply. The record is silent as to whether Beck applied for a public defender, and if he secured private counsel for his eventual trial.

[5] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's conviction on direct appeal. This Court presumes a state court's determination of a factual issue is correct. *See* 28 U.S.C. § 2254(e).

[6] We further note that Carlson's actions before the trial court indicated a lack of respect both for the judicial system and for his obligation of candor to the tribunal. Carlson led the court to believe, as grounds for his failure to prepare, he had paid only minimally – and even twice stating Beck had been "unable" to pay him – when he had in fact received $12,000 in fees. In addition, after the trial court denied Carlson's motion for continuance, he moved to withdraw, thus forcing the court to continue the trial to allow Beck to find counsel, and then filed his reentry shortly after obtaining the continuance.

6

> Carlson's actions had already caused substantial delays, both frustrating the court and causing additional pain to the victims.[7] Carlson had known of the case setting since March but was unprepared to proceed in September, having conducted no depositions despite receiving $12,000 in fees. Moreover, while Carlson argued he could not proceed to trial before deposing the investigating officers, the victims, and S.W. and L.W., Carlson had been given the opportunity to question S.W. and L.W. on cross-examination during the pre-trial hearing but had refused to participate. As well, Carlson further delayed the process of justice by failing to appear at the first motion to disqualify.
>
> In light of our standard of review, we cannot say the court abused its discretion in granting the State's motion to disqualify Carlson as attorney for Beck.

(ECF No. 11-8, at 28-30) (internal citations omitted).

In his reply, Petitioner argues the state appellate court's decision is not entitled to deference because the decision was contrary to Supreme Court precedent in *Gonzalez-Lopez*, and it was based on an unreasonable application of *Gonzalez-Lopez* and *Wheat*. According to Petitioner, where an actual conflict of interest does not exist, the right to counsel of choice is a procedural protection; thus, the court cannot disqualify a defendant's counsel of choice to ensure a fair trial. Petitioner also asserts Carlson acted in Petitioner's best interests by refusing to participate when he knew he was not prepared to effectively represent Petitioner at that time.

A close look at *Gonzalez-Lopez* and *Wheat* is needed to determine if the appellate court's decision is entitled to deference. In *Wheat*, the first of the two cases, the issue was whether "the District Court erred in declining petitioner's waiver of his right to conflict-free counsel and by refusing to permit petitioner's proposed substitution of attorneys." 486 U.S. at 154. The case involved a drug distribution conspiracy with many defendants, three of whom were Mark Wheat (the petitioner), Juvenal Gomez-Barajas, and Javier Bravo. *Id*. at 155. Gomez-Barajas and Bravo were represented by the same attorney, Eugene Iredale. *Id*. Gomez-Barajas was tried first, and

---

[7] After Carlson moved to withdraw, the mothers of the minor victims requested the court not continue the case, stating that the case had been pending for over a year and the girls could not move on with their lives with the trial hanging over their heads, and that it was difficult for the girls to have to discuss the events repeatedly. Nevertheless, because Carlson refused to participate in the trial, the court was left with no choice but to allow him to withdraw and continue the case for Beck to arrange for representation.

7

the jury acquitted him on drug charges, some of which overlapped with Wheat's charges. *Id*. Gomez-Barajas eventually pleaded guilty to other charges, and at the time of Wheat's trial, the district court had not yet accepted Gomez-Barajas's plea. *Id*. Bravo also pleaded guilty. *Id*. At the conclusion of Bravo's guilty plea proceedings, Iredale informed the court that Wheat wanted Iredale to represent him as well. *Id*.

At a hearing the day before Wheat's trial was to begin, the prosecution objected to Iredale representing Wheat on the grounds that it created a serious conflict of interest. *Id*. Wheat emphasized his right to have counsel of his own choosing and the willingness of Gomez-Barajs, Bravo, and Wheat to waive the right to conflict-free counsel. *Id*. Wheat believed the prosecution was manufacturing conflicts in an attempt to disqualify Iredale, who had been extremely effective in representing the other two defendants. *Id*. at 157. The district court found that an irreconcilable conflict of interest existed which could not be waived. *Id*. The Ninth Circuit affirmed. *Id*.

While recognizing that the "right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment," the Supreme Court also recognized the right is limited in many respects. *Id*. at 159. A defendant cannot choose an advocate who is not a member of the bar, an attorney he or she cannot afford or who declines to represent the defendant, or an attorney who has a previous or ongoing relationship with the opposing party. *Id*. A court may also need to inquire if separate counsel is needed when an attorney represents more than one codefendant. *Id*. at 160 (citing *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)). The Supreme Court rejected Wheat's argument that a waiver by all affected codefendants cures any problems created by multiple representation, instead finding that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of

8

the profession and that legal proceedings appear fair to all who observe them." *Id*. "Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Id*.

*Wheat* further held a district court must be allowed "substantial latitude" in refusing waivers of conflicts of interest in cases with actual conflicts and also those where a potential for conflict exists. *Id*. at 163. Although prosecutors may seek to "manufacture" a conflict, the Supreme Court found that "trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all of the other factors which inform this sort of a decision." *Id*. Thus, the Supreme Court held "the District Court's refusal to permit the substitution of counsel in this case was within its discretion and did not violate [Wheat's] Sixth Amendment rights." *Id*. at 164. It further stated there is a presumption in favor of a defendant's counsel of choice, but that presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id*.

Petitioner suggests *Wheat* stands for the proposition that a trial court can disqualify an attorney *only* if there is an actual conflict of interest or the potential for a conflict of interest. However, that is not *Wheat*'s holding. The Supreme Court recognized a conflict of interest as one reason for disqualifying counsel, but also recognized there may be other situations in which a court may need to disqualify counsel. *Id*. at 159 ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects.") The facts of *Wheat* involved a conflict, or potential conflict, but the holding was not limited to such a situation.

*Gonzalez-Lopez* also involves drug conspiracy charges. 548 U.S. at 142. Gonzalez-Lopez was charged with conspiracy to distribute marijuana, and he hired a local attorney to represent him. *Id*. After his arraignment, he also hired Joseph Low, a California attorney. *Id*. Eventually,

9

Gonzalez-Lopez decided he wanted only Low to represent him, and Low filed an application for admission *pro hac vice*. *Id*. The district court twice denied Low's application without explanation. *Id*. Low sought a writ of mandamus from the Eighth Circuit, who dismissed his request. *Id*. Eventually, Gonzalez-Lopez hired a different local attorney for the trial. *Id*. at 143.

In a subsequent order, the district court explained it had denied Low's request for admission *pro hac vice* because, in a different case, Low had violated the Rules of Professional Conduct by directly communicating with a represented party. *Id*. After trial, at which Gonzalez-Lopez was found guilty, the district court granted a motion for sanctions against Low. *Id*. On appeal, the Eighth Circuit vacated Gonzalez-Lopez's conviction finding that the district court erred in interpreting the Rules of Professional Conduct to prohibit Low's conduct in the case, and the district court's denial of Low's motions for *pro hac vice* admission violated Gonzalez-Lopez's Sixth Amendment right to paid counsel of his choosing. *Id*. at 143-44.

Before the Supreme Court the prosecution conceded the district court erroneously deprived Gonzalez-Lopez of his counsel of choice. However, the prosecution argued the deprivation was not "complete" unless Gonzalez-Lopez could show his replacement counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id*. at 144. The Supreme Court did not agree, stating while "the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial," "it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair." *Id*. at 145. The right to counsel of choice requires "a particular guarantee of fairness be provided – to wit, that the accused be defended by the counsel he believes to be best." *Id*. at 146. When the right to counsel of choice is at issue, not the right to a fair trial, a defendant need not show prejudice to show his right has been violated. *Id*.

10

*Gonzalez-Lopez* held its decision did not in any way undermine its prior holdings that "limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them." *Id*. at 151. The Supreme Court held:

> We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar. The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."

*Id.* at 152 (citing *Wheat,* 486 U.S. at 160–164; and *Morris v. Slappy,* 461 U.S. 1, 11–12 (1983)).

Turning to the case at hand, the appellate court in Beck's case upheld the trial court's disqualification of Petitioner's counsel for two reasons. It first held that if the trial court allowed Petitioner's counsel to reenter his appearance it would have called into question the fairness of Petitioner's trial. *Gonzalez-Lopez* holds a defendant's right to his counsel of choice is not based on his right to a fair trial; the two are separate rights. 548 U.S. at 146 ("[The right to counsel of choice] commands, not that a trial be fair, but that a particular guarantee of fairness be provided – to wit, that the accused be defended by the counsel he believes to be best.") However, the second reason the appellate court gave for its holding correctly applies both *Wheat* and *Gonzalez-Lopez.*

In its second reason, Beck's appellate court found the trial court has "'wide latitude' in balancing a defendant's right to choice of counsel against the needs of its calendar, fairness to all parties, and the public's interest in the efficient administration of justice." (ECF No. 11-8, at 29). Mr. Carlson withdrew as counsel of record, with Mr. Beck's consent, the day before the trial was scheduled to begin. His request for continuance of the trial was previously denied on September 8, 2011, as the case had been set for trial in March, with Mr. Carlson's consent, as a number one trial setting. (ECF No. 11-1 at 6-7). Mr. Carlson then faxed a letter to the trial court on Friday,

11

September 9, 2011, advising the court he would announce he was not ready to proceed at the 491 hearing and the trial. He also stated he would not participate in the trial. (*Id.*).

At the 491 hearing on Tuesday, September 13, Mr. Carlson told the court he was not prepared because Mr. Beck's wife stole all of his money and his tools leaving him impoverished. He claimed Mr. Beck did not have money for discovery. (*Id.* at 1). The prosecutor assured the court that all of discovery had been provided to Mr. Carlson twice, once from the prior defense counsel and again by the prosecutor's office. (*Id.* at 3). The court noted Mr. Carlson had eight or nine months to prepare and did not raise the issue until September. (*Id.* at 47). Mr. Carlson then claimed he needed to hire a court reporter to take depositions, but "[t]here is no money for that." (*Id.*)

At the 491 hearing Mr. Carlson refused to question any of the witnesses, even those witnesses he said he wanted to depose. He repeatedly stated he was not ready and would not participate in the hearing. (*See, e.g., Id.* at 29). He also advised the court he would appear at trial if ordered to do so, but he would again announce he was not ready and would not participate in Mr. Beck's defense. (*Id.* at 40). Mr. Carlson was allowed to withdraw his appearance with Mr. Beck's consent. (*Id.* at 48-50 & ECF No. 11-3 at 25). The trial would be continued to another day. The prosecutor objected to the continuance. and both victims' mothers spoke to the court opposing the delay. (ECF No. 11-1 at 55-58).

At the end of the September 13 hearing, Mr. Beck's son advised the court that his family had paid Mr. Carlson $12,000 to represent his father. (*Id.* at 62-65). The court questioned Mr. Carlson who admitted he had been paid approximately $12,000. (*Id.* at 66). The court noted Mr. Carlson did tell the court he had been paid $12,000 to defend Mr. Beck. (*Id.* at 68). The court noted he had $12,000 and nine months to prepare for trial, but he had done nothing to prepare to

12

represent Mr. Beck. Mr. Carlson said this was not accurate. The court provided Mr. Carlson with the opportunity to refute that statement, but Mr. Carlson stated, "I don't choose to do that, your Honor. I have been granted leave to withdraw." (*Id.* at 68-69).

The court asked Mr. Beck if he still want Mr. Carlson to withdraw or to proceed to trial on September 14. Mr. Beck said he did not want to proceed with Mr. Carlson if he was not prepared. The court stated it "would be loathe to allow Mr. Carlson to stay on this case and take it to trial some other time." (*Id.* at 69). The court told Mr. Carlson, "you are off the case." (*Id.* at 71).

Absent any further order from the court, Mr. Carlson entered his appearance again on October 6, along with a notice to take depositions. (ECF No. 11-12 at 8). The prosecutor filed a timely motion to disqualify Mr. Carlson as defense counsel. (*Id.* at 7). Mr. Carlson failed to appear at the first hearing on the motion to disqualify him. The matter was rescheduled for December 2, and he appeared. (*Id.* at 6).

The court found Mr. Carlson's conduct to be improper and requiring disqualification as defense counsel. The court "cannot tolerate defense counsel flatly refusing to participate in the trial." The court noted disqualification was among the options available "to maintain the integrity of the judicial system and protect the defendant's Sixth Amendment right to counsel." Defense counsel "cannot be allowed to sabotage the trial." Mr. Carlson was disqualified from representing Mr. Beck in that case. (ECF No. 18-2).

Mr. Carlson was reprimanded by the Missouri Supreme Court for violating Rules of Professional Conduct 4-1.16(c) and 4-8.4(d). (Supreme Court Case No. SC92992). Rule 4-1.16(c) addresses termination of representation and requires the lawyer to continue

13

representation when ordered to so by a tribunal. Rule 4-8.4(d) states it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

The appellate court held it was appropriate for the trial court to not accept counsel's assurances of preparedness and diligence when counsel had previously not been prepared or diligent. Counsel had already caused substantial delays causing additional pain to the child victims. *Id*. at 29-30. Mr. Carlson omitted the fact the he had been paid $12,000 when he told the court there was "no money" for discovery or to pay a court reporter for the depositions. The trial court found Mr. Carlson "sabotage[d] the trial," and the trial court's removal of Mr. Carlson was an appropriate option "to maintain the integrity of the judicial system and protect the defendant's Sixth Amendment right to counsel." (ECF No. 18-2).

*Gonzalez-Lopez* permits disqualification of counsel on this basis. 548 U.S. at 152 (finding a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.") *Wheat* and *Gonzalez-Lopez* also allow a trial court to disqualify counsel who behaves unethically. It is clear from the record in this case that Petitioner's counsel did not meet the ethical standards of the profession by his lack of preparedness and diligence. When given the chance to explain lack of effective representation, Mr. Carlson declined, stating, "I have been granted leave to withdraw." (ECF No. 11-1 at 71).

Petitioner's fifth ground in this petition, although not properly preserved, alleges Mr. Carlson was "ineffective throughout his representation" and "openly admitted the he was going to do nothing at trial." "Mr. Carlson attended my 491 hearing but blatantly refused to participate." Mr. Carlson's ineffectiveness caused the prosecutors and the original trial judge to file disciplinary complaints against Mr. Carlson for his "egregious breaches of professional conduct in my case." (ECF No. 1 at 14).

Thus, the appellate correctly applied *Wheat* and *Gonzalez-Lopez* in its second reason and overall conclusion. The state appellate court's decision is entitled to deference because its ultimate decision is not contrary to or an unreasonable application of federal law. Even if this Court were to do a *de novo* review of Petitioner's claim, it would find his Sixth Amendment right to choose his counsel was not violated when the trial court disqualified his counsel, Mr. Carlson, on these facts.

### C.    Ground Two

In his second ground for relief, Petitioner asserts his trial counsel was ineffective for failing to object to the prosecution's opening statement that Petitioner had a violent temper, was abusive to members of his family, and on numerous prior occasions, Petitioner had vaginal and anal sex with B.C., crimes for which Petitioner was never charged. Petitioner raised this issue in his Amended PCR motion, and in his appeal of the denial of his PCR motion. (ECF No. 11-8, at 54-58; ECF No. 11-9, at 14). Therefore, it is not procedurally defaulted.

The Missouri Court of Appeals denied Petitioner's argument, finding as follows:

> Admissible evidence may be referred to in opening statement if a good faith basis exists. In order for the failure of trial counsel to object to inadmissible evidence or statements to rise to the level of ineffective assistance of counsel, a movant must prove that the failure to object was not strategic and that it was prejudicial. In many instances, seasoned trial counsel will choose not to object out of an informed belief that to do so may irritate the jury or otherwise do more harm than good.
>
> While a defendant has the right to be tried only on the offense for which he is charged, evidence of a defendant's prior misconduct is admissible when it is logically and legally relevant. Evidence of uncharged crimes is logically relevant if it is probative of motive, intent, the absence of mistake or accident, identity, or a common plan or scheme. In addition, evidence of uncharged crimes may be admitted when the conduct is part of the circumstances or the sequence of events surrounding the offense charged. In this context, the jury is allowed to understand a complete and coherent picture of the events that transpired.
>
> At the evidentiary hearing, Beck's trial counsel explained that he did not object during opening statements because he was waiting to see what the State was

15

> going to try to present and knew it was going to be a contentious trial so he did not want to ruin any goodwill he had with the court by making objections at the beginning of the trial. Trial counsel testified generally that he did not recall what objections he made during the trial and deferred to the trial transcript.
>
> The motion court did not clearly err in denying this claim. Beck has failed to show that there is a reasonable probability that the result would have been different. Indeed, the trial court found that evidence of Beck's prior bad acts was admissible at trial because it was logically and legally relevant. Thus, even had trial counsel objected during opening statement, it would have likely been denied and Beck has not shown that the outcome would have been different.
>
> Further, as the motion court found, Beck did object to evidence of prior bad acts during the trial, but those objections were denied because the trial court found the evidence admissible. While the trial court's ruling on this issue is not before us, we find that the evidence was properly admitted to allow the jury to understand a complete and coherent picture of the events that transpired, and trial counsel cannot be ineffective for failing to object to admissible evidence. Point denied.

(ECF No. 11-11, at 4-5) (internal citations omitted).

Petitioner argues the appellate court's decision is not entitled to deference because it unreasonably applied the *Strickland* standard. To establish a violation of the Sixth Amendment, Petitioner must establish that his counsel was ineffective, and that it prejudiced him, meaning there is a reasonable probability he would not have been convicted had his counsel been effective. *Strickland*, 466 U.S. at 687. Petitioner asserts the improperly admitted evidence was so detrimental that if it had not been admitted, there is a reasonable likelihood the outcome of the trial would have been different. However, he does not establish why this evidence was inadmissible. This Court does not find error in the state courts' findings that the prior bad acts evidence in this case was admissible. Furthermore, in federal habeas proceedings, federal courts do not review evidentiary rulings of state courts unless they implicate federal constitutional rights. *See Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004).

The evidence was admissible. Petitioner's trial counsel cannot be ineffective for failing to object to the prosecution's opening statements about admissible evidence. Petitioner cannot

16

establish he was prejudiced by his counsel's failure to object to the prior bad acts evidence because his objection would have been overruled. Trial counsel did object to the introduction of some of the prior bad acts evidence, but he was unsuccessful. He preserved the issue in his motion for a new trial which was also overruled. (ECF No. 11-8 at 85). The appellate court properly applied the *Strickland* standard, and its decision is entitled to deference. The Court will deny the Petition on this ground.

### D.      Grounds Three and Four

In his third and fourth grounds for relief, Petitioner challenges the effectiveness of his counsel on direct appeal, asserting his appellate counsel was ineffective for failing to assert as grounds for appeal that the trial court erred in admitting the prior bad acts evidence and in admitting statements made by Beck to the police. Petitioner raised both of these arguments in his Amended PCR motion and in his appeal of the denial of his PCR motion. Thus, they are not procedurally defaulted.

The Missouri Court of Appeals denied Petitioner's arguments, finding as follows:

> At the evidentiary hearing, Beck's appellate counsel testified she did not raise either argument Beck claims should have been raised because counsel did not believe either argument had merit. Specifically, she did not believe Beck's argument regarding the admission of the prior bad act evidence had merit because there were preservation problems that would have made it reviewable only for plain error on appeal, and because appellate courts had upheld the admission of similar prior bad acts evidence in other cases against the same victim. With regard to statements that were unconstitutionally obtained, appellate counsel testified that she did not see any issue because it appeared that Beck had been read his *Miranda* rights before he made the statement.
>
> Beck has failed to show appellate counsel failed to raise a claim of error that a competent and effective lawyer would have recognized and asserted, and has failed to show that the claimed error was sufficiently serious to create a reasonable probability that if it had been raised, the outcome of the appeal would have been different. Appellate counsel's explanations for not raising the claims were reasonable and her belief that the claims had no merit are supported by the record. Thus, the motion court's findings that appellate counsel was not

ineffective for failing to raise these claims on direct appeal was not clearly erroneous. Points two and three are denied.

(ECF No. 11-11, at 6).

### i. Prior Bad Acts Claim

Petitioner argues his appellate counsel's decision not to challenge the admissibility of prior bad acts evidence on direct appeal was not a strategic decision to "winnow out weaker claims" because he believes this claim is much stronger with a greater likelihood to succeed than the claim that was raised on appeal regarding his right to counsel of choice. To establish his appellate counsel was ineffective for failing to raise this claim on appeal and that he was prejudiced by her ineffectiveness, Petitioner first has to establish the prior bad acts evidence was not admissible. Otherwise, his counsel cannot be ineffective for failing to raise a meritless claim. Petitioner cannot be prejudiced by the failure to raise a claim that would not have been successful. Petitioner does not do so. Petitioner asserts the testimony that Petitioner had a violent nature was inadmissible because it was beyond the scope of any logical or legal relevance to the case. However, Petitioner ignores the fact that he was charged with two counts of Forcible Sodomy.

This Court finds no error in the trial court's decision to admit the evidence of Petitioner's prior bad acts as to his violent nature or his uncharged sexual abuse of B.C. As the PCR motion court concluded in denying Petitioner's PCR motion on this point – the evidence was admissible to explain why the victims might not have consistently resisted sexual abuse and failed to report it, it shows the defendant's hostility and animus toward the victims, and his motive to injure or abuse them, and it demonstrates the victims' fear of the movant. (ECF No. 11-8, at 83-85). All logically and legally relevant reasons for admitting the evidence of Petitioner's prior bad acts.

The Court will deny the Petition on this ground because he cannot establish his appellate counsel was ineffective or that he was prejudiced by her failure to raise a meritless claim on appeal.

### ii.     Statements to Police Claim

In ground four, Petitioner argues his appellate counsel should have raised a claim on appeal that the trial court improperly admitted Petitioner's oral and written statements to police after improperly denying Petitioner's motion to suppress the statements. Petitioner asserts his statements were not knowingly and voluntarily made because he was not given access to an attorney, the length and nature of the interrogation was inherently coercive, Petitioner was unaware his statements were being recorded, Petitioner was induced to make statements by the officers' implied and expressed promises of leniency and offers to help Petitioner and his family, and he was not adequately advised of his *Miranda* rights. Petitioner provides no factual or legal support for his argument. He makes conclusory statements about the "serious red flags" raised by his statement to police, but little else.

Petitioner has not established his appellate counsel was ineffective for failing to raise this claim, nor has he established he was prejudiced by her failure to do so. The Court sees no reason not to afford deference to the appellate court's decision denying Petitioner's PCR appeal on this point. The Court denies Petitioner's petition on ground four.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Jerry Beck for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Jerry Beck's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional

right and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

      So Ordered this 27th day of October.

                          */s/ Stephen R. Welby*
                          **STEPHEN R. WELBY**
                          **UNITED STATES MAGISTRATE JUDGE**